UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATRICIA LOVE,                                          Case No. 19-cv-448
      Plaintiff,                                       Dlott, J.
                                                       Litkovitz, M.J.

      vs.

TALBERT HOUSE, et al.,                                 **REPORT AND**
      Defendants.                                      **RECOMMENDATION**


Plaintiff Patricia Love brings this action against Talbert House, her former employer, and Transamerica Retirement Solutions, LLC ("Transamerica") alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. This matter is before the Court on Transamerica's motion to dismiss (Doc. 11), plaintiff's response in opposition (Doc. 16), and Transamerica's reply memorandum/renewed motion to dismiss plaintiff's amended complaint (Doc. 22).[1] This matter is also before the Court on Talbert House's motion to dismiss plaintiff's amended complaint (Doc. 23),[2] plaintiff's memorandum in opposition (Doc. 24), Talbert House's reply memorandum (Doc. 28), and the parties' notices of supplemental authority (Docs. 27, 29, 30). On August 4, 2020, the Court held oral argument on the pending motions. This matter is now ripe for review.

## I. Plaintiff's Amended Complaint

Plaintiff's amended complaint alleges the following. Plaintiff Patricia Love was hired as a laboratory director with Talbert House in August 2002. Plaintiff served as a "CLIA [Clinical

---

[1] Transamerica alleges there are no substantive differences between the allegations of plaintiff's original and amended complaints. (Doc. 22 at 1). Therefore, Transamerica has renewed its motion to dismiss seeking dismissal of plaintiff's amended complaint. (*Id.*).

[2] As plaintiff's amended complaint is the operative complaint and supersedes the original complaint for all purposes, *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013), Talbert House's motion to dismiss the original complaint (Doc. 12) should be denied as moot.

Laboratory Improvement Amendments] Laboratory Director and Technical Consultant."[3]  Her earnings were reported as a W-2 employee of Talbert House.  (Doc. 15, ¶¶ 7-8).

Talbert House administered the Talbert House 403(b) Tax Sheltered Annuity Plan ("the Plan") for the benefit of its employees, which set terms for both non-elective employer contributions and elective employee contributions ("employee deferrals").  (*Id.*, ¶¶ 9-10).  Prior to November 2017, the Plan provided that an employee became eligible for non-elective employer contributions after two years of service.  Two years of service was defined as two consecutive years during which an employee works at least 1000 hours. (*Id.*, ¶ 11).  Talbert House told plaintiff that she was not eligible to participate in its 403(b) Plan, including receiving non-elective employer contributions or making elective employee deferrals.  (*Id.*, ¶¶ 13, 27, 30, 34).

In December 2011, an employer contribution was deposited into plaintiff's 403(b) account.  (*Id.*, ¶ 12).  This prompted plaintiff to call Talbert House's human resources (HR) department to ask whether the deposited employer contribution meant that she was eligible for elective employee deferrals.  The Talbert House receptionist placed plaintiff on hold so she could obtain an answer, and when she returned, the receptionist advised plaintiff that she was not eligible for elective employee deferrals.  The employer contribution was removed from plaintiff's 403(b) account within a few months.  (*Id.*, ¶¶ 13-14).

Beginning in 2014, plaintiff became eligible for employer contributions under the Plan's terms, having worked more than 1000 hours in 2012 and 2013.  However, in violation of the Plan, plaintiff received no employer contributions in 2014 or 2015.  (*Id.*, ¶¶ 16-17, 22).

---

[3] *See* 42 C.F.R. 493, *et seq.*

In January 2016, another employer contribution appeared in plaintiff's 403(b) account but disappeared from the account later that day.  (*Id.*, ¶ 21).

In September 2016, Talbert House advised plaintiff that she had worked enough hours to become eligible for certain employee benefits.  (*Id.*, ¶ 24).  When Talbert House told plaintiff that other employee benefits had also vested, her supervisor sent her a new employment agreement that stated plaintiff was a contractor and not an employee, which would have forfeited her employee benefits.  Plaintiff refused to sign the agreement.  (*Id.*, ¶ 25).

In February 2017, Talbert House announced it was modifying its 403(b) Plan effective October 31, 2017.  The revised plan would narrow the class of eligible employees to exclude "on-call" employees and would automatically opt in new employees for elective deferrals.  (*Id.*, ¶¶ 26-28).  Plaintiff emailed an HR representative in March 2017 to inquire about her eligibility for the Talbert House 403(b) Plan.  She did not receive a reply.  (*Id.*, ¶¶ 30-31).

On April 5, 2017, Talbert House's HR Director told plaintiff for the first time that she was eligible to make employee contributions into a 403(b) account.  (*Id.*, ¶ 33).  Plaintiff asked how long she had been eligible to make employee contributions and whether she could retroactively contribute.  (*Id.*, ¶ 34).  The HR Director did not reply.  (*Id.*, ¶ 35).  That same day, plaintiff called defendant Transamerica and was advised by a Transamerica employee that she was only "recently added as eligible" to make elective contributions and referred her back to Talbert House HR.  (*Id.*, ¶ 36).  Plaintiff then contacted the Talbert House HR Director with this information and was advised that she was ineligible for employer contributions because she was an "on call employee."  (*Id.*, ¶ 38).  Plaintiff alleges that as a full-time employee for Talbert House, she was eligible for employer contributions even if she was considered "on-call" under the then-current, pre-November 2017 Plan.  (*Id.*, ¶ 39).

In May 2017, December 2017, and January 2018, Talbert House made employer contributions to plaintiff's 403(b) account.  (*Id.*, ¶¶ 42-43, 46).  The employer contributions to plaintiff's account were incorrect based on plaintiff's income and contrary to the Plan terms.  (*Id.*, ¶ 47).  Plaintiff emailed the Talbert House HR and payroll departments to contest the amount.  Talbert House removed the January 2018 deposit two weeks later without explanation.  (*Id.*, ¶¶ 45, 48-50).

On February 8, 2018, Talbert House told plaintiff that her employee status and benefits classification would be changed to "modified full-time" on March 1, 2018.  Talbert House gave no explanation for this change and failed to respond to plaintiff's questions about her Plan eligibility.  (*Id.*, ¶¶ 51-52).  That same day, plaintiff asked to speak with the new HR Director, Cynthia Strope, to address her concerns.  (*Id.*, ¶ 53).  Ms. Strope replied on February 12, advising plaintiff they could meet "later."  Two days later, on February 14, 2018, plaintiff was advised that her position was being eliminated.  Plaintiff was offered her job back on a contractual basis, meaning she would be ineligible for Plan benefits.  (*Id.*, ¶ 54-56).  Talbert House terminated plaintiff two weeks before her "modified full-time" status would have become effective, which would have entitled her to certain benefits under the Plan.  (*Id.*, ¶ 57).  Plaintiff reiterated her request for a meeting with Ms. Strope, who informed plaintiff that she was "part-time" and "on-call" and therefore ineligible for employer contributions.  (*Id.*, ¶¶ 58-59).

Plaintiff, through counsel, wrote to Talbert House on April 12, 2018, requesting an explanation for the amount of contributions being made and Talbert House's decision denying plaintiff's eligibility for employee deferrals and non-elective employer contributions.  The letter also advised Talbert House of plaintiff's potential claims under ERISA.  (*Id.*, ¶ 60).  Talbert House responded that it would look at the Plan and plaintiff's documentation.  (*Id.*, ¶ 61).  On

May 24, 2018, Talbert House replied with an adverse determination, advising that plaintiff was not entitled to any further benefits. (*Id.*, ¶ 62).

On June 25, 2018, plaintiff, through counsel, wrote to Talbert House "raising concerns about Talbert House's violations of the Plan and its breaches of fiduciary duty," and challenged the determination that plaintiff was not entitled to any further benefits under the Plan. The letter concluded with a request to "advise of Ms. Love's administrative remedies with respect to the foregoing breaches of fiduciary duty." (*Id.*, ¶ 64). On August 2, 2018, Talbert House denied that it had violated the Plan or breached its fiduciary duties and stated that plaintiff's potential ERISA claims were "without merit." (*Id.*, ¶ 66). Talbert House did not respond to plaintiff's request about the existence of further administrative remedies. (*Id.*, ¶ 67). Plaintiff's counsel thereafter continued to communicate with Talbert House about plaintiff's eligibility for benefits, and Talbert House advised plaintiff that she was not eligible and her claims had no merit. (*Id.*, ¶ 68).

On May 9, 2019, for the first time, Talbert House's counsel advised plaintiff's counsel that plaintiff had not exhausted her administrative remedies under the Plan. (*Id.*, ¶ 69). Plaintiff's counsel replied that same day "with a timeline of all written and telephonic communications with Defendant Talbert House made in an effort to contest its determination that Ms. Love was ineligible for certain benefits, as well as to assert Ms. Love's potential claims stemming from Defendants' breaches of fiduciary duty. Counsel for Ms. Love stated that these prior communications constituted both claims for benefits and requests for review, and requested that if they did not suffice as such under the Plan, that she be advised." (*Id.*, ¶ 70). Counsel for Talbert House "did not respond to Ms. Love's question of whether the prior communications

were sufficient as claims for benefits and/or requests for review," and counsel continued to confer about their respective positions until the complaint was filed on June 12, 2019.  (*Id.*, ¶ 71).

Plaintiff alleges Talbert House, the Plan administrator, violated ERISA when it breached its statutory fiduciary duties by misrepresenting and omitting information about her benefit eligibility such that plaintiff "lost investment income and lost tax benefits of deferring compensation through elective employee contributions from 2008 to 2018" (*Id.*, ¶ 80) (Count I); wrongfully denied her benefits by excluding her from the employer contributions to which she was entitled under the Plan's terms from 2014 to November 2017 and misclassified plaintiff's employment such that Talbert House denied plaintiff benefits to which she was entitled under the Plan from November 1, 2017 to February 2018 (Count II); and interfered with plaintiff's protected rights and retaliated against her by discharging her before her benefits classification entitling her to greater benefits was about to change (Count IV).  Plaintiff alleges that Transamerica breached its fiduciary duty under ERISA by failing to represent and/or misrepresenting material facts concerning her eligibility under the Plan (Count III).

## I.  Motion to dismiss standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)).  Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required.  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  Although the plaintiff need not

plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly,* 550 U.S. at 555, 570).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

"Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Wysocki v. Int'l Bus. Mach. Corp*., 607 F.3d 1102, 1104 (6th Cir. 2010)).  If the Court considers evidence outside the complaint, the motion to dismiss is converted to a motion for summary judgment and the Court must give the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  *Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to [a] defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment."  *Gavitt*, 835 F.3d at 640 (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  Plaintiff does not dispute that the Plan documents attached to Talbert House's motion to dismiss are the operative plan documents referenced in the amended

complaint.  Therefore, the Court will consider these documents in ruling on defendants' motions to dismiss.

## II.  Defendant Transamerica's motion to dismiss (Doc. 11)

In Count III of the amended complaint, plaintiff alleges that Transamerica breached its fiduciary duty under ERISA by failing to represent and/or misrepresenting material facts concerning plaintiff's eligibility under the Plan.  Transamerica moves to dismiss plaintiff's amended complaint asserting that plaintiff fails to state a claim for breach of fiduciary duty by Transamerica.

To state a claim for relief under ERISA based on breach of fiduciary duty, the plaintiff must allege facts showing: (1) that a defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these [representations] constituted material misrepresentations; and (3) that the plaintiff relied on the misrepresentations to her detriment. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006) (citing *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)).

ERISA defines a "fiduciary" as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

29 U.S.C. § 1002(21)(A).  "Because 'fiduciary status is not an all or nothing concept,' the relevant question is whether an entity 'is a fiduciary with respect to the particular activity in question.'" *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 797-98 (6th Cir. 2012) (quoting *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006)).  "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in

8

making an adequately informed decision in pursuing . . . benefits to which she may be entitled."
*James*, 305 F.3d at 449 (quoting *Krohn v. Huron Mem'l Hosp*., 173 F.3d 542, 547 (6th Cir.
1999)).

Plaintiff states that Transamerica's role in this matter is unclear.  Plaintiff argues that
Transamerica may be a "vendor" under Section 1.70 of the Plan, such that it exercises control
over the Plan assets and may have been delegated certain duties by Talbert House.  (Doc. 16 at 4-
5, citing Doc. 12-1 at PAGEID 76).  Plaintiff argues that because the Plan confers sufficient
discretionary authority and control to its vendor, the vendor is a fiduciary under the Plan and,
depending on the extent of that delegation, *may* have breached that fiduciary duty by
misrepresenting or omitting information.  (Doc. 16 at 5).  Plaintiff alleges that the
"misrepresentation" by Transamerica's employee was that plaintiff had only "recently" become
eligible to make employee contributions when, according to plaintiff, she was always eligible for
elective deferrals since the beginning of her employment.  (Doc. 16 at 5).  Plaintiff further
alleges that depending on the extent of the delegation by Talbert House, Transamerica may have
been tasked with providing notices and disclosures under the Plan and breached this duty by not
providing the requisite notices and disclosures.  Plaintiff alleges this information will not be
known until discovery is conducted.  Plaintiff contends that Transamerica should remain in the
case until plaintiff learns whether Talbert House delegated certain duties to Transamerica, and
whether Transamerica had specific notice and disclosure duties that it breached.

Plaintiff's amended complaint contains a single factual allegation concerning
Transamerica's involvement in this case:

> Ms. Love called Defendant Transamerica, the Plan administrator,[4] the same day
> [April 5, 2017].  Glenn L/N/U, a Transamerica employee, advised her that she was

---

[4] At oral argument, plaintiff clarified that her amended complaint mistakenly identified Transamerica as the plan administrator, when in fact her former employer, Talbert House, was the plan administrator.

only "recently added as eligible" to make elective contributions, and referred her
back to Talbert House HR.

(Doc. 15, ¶ 36).  Plaintiff alleges that when she contacted Talbert House's HR Director following
the call to Transamerica, she was informed by Talbert House (incorrectly according to the
amended complaint) that she was "ineligible for employer contributions because she was an 'on
call employee.'"  (*Id*., ¶¶ 37-38).

Assuming Transamerica was a fiduciary for purposes of the motion to dismiss, the
amended complaint fails to allege a plausible claim for breach of fiduciary duty.  The amended
complaint does not allege facts showing that Transamerica made a misrepresentation to plaintiff
upon which she relied to her detriment.

First, plaintiff does not allege that Transamerica's statement that she was "recently added
as eligible" was false.  Plaintiff argues that Transamerica's statement was incorrect because
plaintiff had always been eligible to make employee contributions since the start of her
employment.  The amended complaint, however, fails to allege that Transamerica, which was not
the Plan administrator, had any authority to determine eligibility for Plan benefits.
Transamerica's statement that plaintiff was "*recently* added as eligible" appears to convey the
timing of plaintiff's addition to the rolls of employees eligible to make employee deferrals,
which was an accurate statement.  Where a defendant's statements are neither inaccurate nor
misleading, there is no breach of fiduciary claim.  *See Haviland v. Metro. Life Ins. Co*., 730 F.3d
563, 573 (6th Cir. 2013) ("Without any misrepresentation or inaccurate statement, the plaintiffs'
fiduciary duty claim fails as a matter of law.").

Second, even if the Court were to construe the statement by Transamerica as a
"misrepresentation" about plaintiff's eligibility for benefits, the amended complaint fails to
allege how this is a "material" misrepresentation under ERISA that plaintiff relied upon to her

detriment.  Plaintiff does not allege how Transamerica's alleged representation that she was only "recently added as eligible to make elective contributions" misled her.  The amended complaint alleges that Transamerica referred plaintiff back to Talbert House's human resources department to follow up, which she did.  The remainder of the amended complaint alleges actions and omissions by Talbert House and not Transamerica.[5]  Nor has plaintiff alleged facts showing she reasonably relied on this single statement from Transamerica to her detriment.  Plaintiff does not allege what action she took or failed to take in response to the information imparted by the Transamerica employee, or whether Transamerica had any involvement in the alleged misclassification of her job, the underreporting of her hours worked, or the termination of her employment.  In the absence of facts showing Transamerica made a material misrepresentation upon which plaintiff reasonably relied, the amended complaint fails to allege a plausible claim for breach of fiduciary duty against Transamerica under *Iqbal* and *Twombly*.

Finally, plaintiff contends discovery may reveal that Transamerica was in fact a fiduciary; that Transamerica was delegated specific duties by Talbert House; and that Transamerica breached those duties.  Plaintiff cannot rely on speculation or conjecture that discovery may unearth some cause of action against Transamerica.   Plaintiff's amended complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 444 (citations omitted).  Plaintiff does not allege facts showing what duties, if any, Talbert House delegated to Transamerica or that Transamerica violated such duties.  The amended complaint fails to allege facts from which the Court can

---

[5]Page 11 of the amended complaint sets forth the claim for relief against Transamerica.  ("Count III, Breaches of Fiduciary Duty-29 U.S.C. § 1132(a)(3)") (Doc. 15 at 11, ¶¶ 90-94).  This section of the amended complaint merely recites the elements of a breach of fiduciary claim without providing any factual allegations in addition to those alleged in paragraph 36 of the amended complaint.  The formulaic recitation of the elements of a cause of action are insufficient to state a claim for relief.  *Twombly*, 550 U.S. at 555.

reasonably infer that Transamerica took an action to violate plaintiff's rights under ERISA. Therefore, Transamerica's motion to dismiss should be granted.

## III.  Defendant Talbert House's motion to dismiss (Doc. 23)

### A.  Count II

Count II of the amended complaint against Talbert House alleges a wrongful denial of benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  Talbert House seeks dismissal of this claim on the basis that plaintiff failed to exhaust her administrative remedies under the Plan.

While the ERISA statute does not contain an administrative exhaustion requirement, the Sixth Circuit has "read an exhaustion requirement into the statute."  *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 560 (6th Cir. 2017) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998)).[6]  The exhaustion requirement serves numerous purposes, including but not limited to promoting the consistent treatment of claims for benefits, providing a nonadversarial method of claims settlement, and enhancing the ability of trustees of benefit plans to correct their errors.  *Hitchcock*, 851 F.3d at 560 (citing *Costantino v. TRW, Inc*., 13 F.3d 969, 975 (6th Cir. 1994)).  "If these purposes would not be furthered, there would be no sense in exhausting administrative remedies."  *Id*.  Therefore, a plaintiff generally must exhaust her administrative remedies prior to seeking judicial relief.  *See Miller v. Metropolitan Life Ins. Co*., 925 F.2d 979, 986 (6th Cir. 1991) ("The administrative scheme of ERISA requires a

---

[6]At oral argument, Talbert House essentially conceded that exhaustion under ERISA is not a jurisdictional requirement that is subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and stated it was electing to proceed with its argument under Fed. R. Civ. P. 12(b)(6).  *See Welsh v. Wachovia Corp.*, 191 F. App'x 345, 357 n.5 (6th Cir. 2006) ("[U]nlike the Second Circuit, the Sixth Circuit does not characterize the exhaustion requirement as 'jurisdictional' but instead holds that application of the doctrine 'is committed to the sound discretion of the district court.'") (citing *Fallick*, 162 F.3d 410, at 419; *Costantino v. TRW, Inc*., 13 F.3d 969, 974 (6th Cir. 1994)).

participant to exhaust his or her administrative remedies prior to commencing suit in federal court.").

There is an exception to the administrative exhaustion requirement, however, where "resort to the administrative route is futile or the remedy inadequate." *Hitchcock*, 851 F.3d at 560 (quoting *Costantino*, 13 F.3d at 974).  To establish futility, "[a] plaintiff must show that 'it is certain that h[er] claim will be denied on appeal, not merely that [s]he doubts that an appeal will result in a different decision.'" *Fallick*, 162 F.3d at 419 (citation omitted).  The plaintiff must show "a clear and positive indication" that her claim will be denied on appeal.  *Id*.

Talbert House alleges Count II of the complaint should be dismissed because plaintiff failed to exhaust the administrative remedies set forth in the Plan.  Section 7.05 of the Plan provides the claims procedure for a denial of benefits under the Plan.  (Doc. 23, Ex. A, § 7.05(I)).  This section states, "A Participant or a Beneficiary may file with the Plan Administrator a written claim for benefits, if the Participant or the Beneficiary disputes the Plan Administrator's determination regarding the Participant's or Beneficiary's Plan benefit."  (*Id*.).  Section 7.05(I) incorporates by reference the Plan's claim procedures set forth in the Plan's summary plan description (SPD).  (*Id.*).  The SPD sets forth the procedure for submitting a claim for benefits:  "You or your beneficiaries may make a request for any Plan benefits to which you believe you are entitled.  Any such request should be in writing and should be made to the Administrator. . . ."  (Doc. 23, Ex. B at 13).  A "request for Plan benefits will be considered a claim for Plan benefits, and it will be subject to a full and fair review.  If your claim is wholly or partially denied, the Administrator will provide you with a written or electronic notification of the Plan's adverse determination."  (*Id*. at 14).  The SPD also provides a Claims Review Procedure for the denial of a claim for benefits.  (*Id*. at 15-17).

Talbert House contends that plaintiff did not file a written request for employer contributions to the plan administrator when she allegedly became eligible in 2014 or that any such request was denied by Talbert House.  Talbert House also states that plaintiff's first written inquiry about her eligibility for benefits occurred via an email to an HR representative on March 30, 2017.  (Doc. 23 at 11, citing Doc. 15, ¶ 30).  Talbert House alleges this was not a "claim" for benefits, but simply an inquiry by plaintiff "about [her] eligibility for the 403b Plan at Talbert House."  (*Id*., citing Doc. 15, ¶ 31).  Talbert House further contends there are no allegations that the plan administrator denied plaintiff any benefits or that plaintiff filed a written claim for review within 60 days after receiving any such denial under the terms of the Plan and SPD. Talbert House also contends that while plaintiff alleges the amounts of the May and December 2017 employer contributions were inaccurate, the amended complaint does not allege plaintiff ever filed a written claim for benefits regarding these two contributions.  Talbert House, therefore, argues that plaintiff has failed to exhaust her administrative remedies under the Plan, and Count II of the Amended Complaint should be dismissed.

Plaintiff alleges she fulfilled the Plan's claim and appeal process by repeatedly contesting Talbert House's determinations in writing.  She asserts the Plan language does not require any special words to invoke the claim process, and she initiated the process when she wrote to Talbert House, the plan administrator, on March 30, 2017, inquiring about her eligibility.  (Doc. 24 at 8).  Plaintiff alleges she was advised by Talbert House that she was eligible for elective deferrals but not employer contributions.  (*Id*.; Doc. 15, ¶¶ 33, 38).  Plaintiff alleges she continued to follow up over the phone and in writing to clarify her benefits and to contest the decision until her termination on February 14, 2018.  (*Id*.; Doc. 15, ¶¶ 41, 45, 48-49, 52-53, 58). Plaintiff states that after her termination, her lawyer wrote to Talbert House on April 12, 2018.

14

In this written correspondence, plaintiff requested an explanation regarding the amount of contributions being made and Talbert House's decision denying plaintiff's eligibility for deferrals and non-elective employer contributions.  The letter also advised Talbert House of plaintiff's potential claims under ERISA.  (*Id.*, ¶ 60).  When Talbert House advised plaintiff she was not entitled to further benefits, plaintiff again challenged Talbert House's determination in writing and requested Talbert House to "advise of Ms. Love's administrative remedies with respect to the foregoing breaches of fiduciary duty."  (*Id.*, ¶¶ 62, 64).  Talbert House denied that it had violated the Plan or breached its fiduciary duties and stated that plaintiff's potential ERISA claims were "without merit."  However, Talbert House did not respond to plaintiff's request regarding the existence of further administrative remedies.  (*Id.*, ¶¶ 66, 67).  Plaintiff alleges that Talbert House raised the exhaustion issue for the first time on May 9, 2019, and subsequent communications between the parties did not resolve the issues.  (*Id.*, ¶¶ 69-71).  Plaintiff contends the foregoing actions fulfill the administrative exhaustion requirements set forth in the Plan.

The Court determines that plaintiff has satisfied administrative exhaustion in this case. The Talbert House plan documents do not specify a particular method for making a "claim" for benefits under the Plan.  The Plan incorporates the SPD by reference, which in turns states that a "request" for benefits is to be construed as a "claim" for benefits.  (Doc. 23-2 at 14).  The Plan states a request for benefits "should be made in writing and should be made to the Administrator"; however, the Plan does not define what constitutes a "request" for benefits nor does it mandate that a claim for benefits be filed on a specified form or with a specified individual.[7]  Plaintiff contacted Talbert House's HR department on numerous occasions, both

_____

[7] At oral argument, counsel for Talbert House was unable to state how a specific claim for benefits should be made and to whom such request or claim should be made.

orally and in writing, to ask whether she was entitled to benefits. (Doc. 15, ¶¶ 13, 15, 30-35, 37-38, 41, 48-49, 53, 58-59). It is reasonable to construe plaintiff's communications with Talbert House human resources professionals as a "request" for benefits under the Plan.

Talbert House repeatedly phrases plaintiff's actions as mere inquiries about her benefits. However, this fails to take into account the Plan language, which does not specify a particular method for making a claim, or the context in which plaintiff's inquiries occurred, which an ordinary person would understand as making a request for benefits to which one is entitled. For example, shortly after Talbert House announced it was modifying its 403(b) Plan (Doc. 15, ¶ 26), plaintiff sent an email to Talbert House's human resources department and the HR director responded. The amended complaint alleges:

> 30. On March 30, 2017, Ms. Love emailed Beth Weaver in HR, saying, "I also want to inquire about my eligibility for the 403b Plan at Talbert House. In the past, I was told that I was ineligible, but possibly something has changed."
> . . .
>
> 32. On April 5, 2017, Ms. Foster informed Ms. Love that she was eligible for medical benefits. Ms. Love replied, "I assume I am only eligible for this benefit (no dental, 403b, etc.), and if so, what type of employee am I categorized?"
>
> 33. It was then and only then, on April 5, 2017, that Ms. Foster told Ms. Love that she could elect to defer income into the 403(b) account.
>
> 34. Ms. Love replied, "As far as the 403(b), in the past several times I was told by representatives from HR that I was ineligible for that as I mentioned to you last year when I returned my insurance election form to you. Apparently, I am eligible. For how long was I eligible, and can I retroactively place monies there if I cho[o]se[?]"
>
> 35. Ms. Foster did not reply.

Because the Plan does not require that a request for benefits take a specified form, an ordinary person would understand plaintiff's statements to the director of HR to be a request for the 403(b) Plan benefits to which she was entitled. *Cf. Shelby Cty. Health Care Corp. v. S. Council*

*of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 934 (6th Cir. 2000) ("In interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person.").  Plaintiff's request for 403(b) Plan benefits is reasonably construed as a claim for benefits under the Plan for exhaustion purposes.

In addition, the allegations of the amended complaint and the letters and emails submitted in this case show there were numerous discussions between plaintiff, Talbert House, and their respective counsel about the dispute over plaintiff's eligibility for benefits, all of which satisfy the Plan's Claims Review Procedure.  Taken in the context of the entire timeline of events, the actions of plaintiff and her counsel show that plaintiff made requests for benefits that were denied and that counsel further objected to Talbert House's repeated representations that plaintiff was not eligible for any 403(b) Plan benefits.  (Doc. 27-3).

Plaintiff's counsel wrote a letter dated April 12, 2018 to Talbert House's Director of Human Resources, Cynthia Strope, alleging that Talbert House wrongfully denied plaintiff 403(b) Plan benefits to which she was entitled, in addition to raising the other claims in this case. (Doc. 15, ¶ 60; Doc. 27-1).  While the letter requests information surrounding the circumstances of plaintiff's termination and an explanation for Talbert House's decisions capping her 403(b) eligible income and finding plaintiff ineligible for non-elective employer contributions until 2018, the letter also advised Talbert House that the letter "shall serve as formal notice of Patricia Love's claims against the Talbert House."  (Doc. 27-1 at 2).  The letter advised Talbert House that plaintiff asked the human resources department many times if she could defer part of her compensation into a Plan account, and she was consistently told she was ineligible.  (*Id*. at 3). The letter further asserts that plaintiff was always a W-2 employee working over 1000 hours per year as stipulated by the Plan and was thereby eligible for employer contributions, and plaintiff

17

was deprived of employer contributions over the course of her employment.  (*Id.*).   The letter clearly put Talbert House on notice that plaintiff was claiming benefits to which she was denied.

Finally, plaintiff's amended complaint and letter of June 25, 2018 may reasonably be construed as challenging Talbert House's determination that plaintiff was not entitled to any further benefits under the Plan.  (Doc. 27-3).[8]   The letter reiterates the factual timeline of events and plaintiff's pursuit of benefits under the 403(b) Plan, including Talbert House's repeated findings that plaintiff was ineligible for Plan benefits.  In addition, the letter concluded with a request to "advise of Ms. Love's administrative remedies with respect to the foregoing breaches of fiduciary duty."  (*Id.* at 3; Doc. 15, ¶ 64).  Talbert House did not respond to this request before it advised plaintiff, nearly one year later in May 2019, that she had not exhausted her administrative remedies.  (Doc. 15, ¶¶ 67, 69).  Accepting plaintiff's factual allegations as true and making reasonable inferences in plaintiff's favor as the Court must do on a motion to dismiss, *Keys*, 684 F.3d 608, the Court finds that plaintiff has exhausted her administrative remedies under the Plan, and the motion to dismiss on this basis should be denied.[9]

---

[8] The cases cited by Talbert House, *Traughber v. Sun Life Fin. (U.S.) Servs. Co., Inc.*, No. 1:18-cv-00036, 2018 WL 6050875 (W.D. Ky. Nov. 19, 2018) and *Sears v. Drees Co.*, No. CIV.A. 13-132, 2015 WL 779003 (E.D. Ky. Feb. 24, 2015), are distinguishable.  In *Traughber*, the letter sent by the plaintiff's counsel was not construed as an appeal of the denial of life insurance benefits because the language of the letter was qualified.  The letter explicitly stated that "a determination will be made whether to request a review of the denial or to pursue other remedies" once certain documents were received.  2018 WL 6050875, at *5.  The court found that the "letter merely indicated that an appeal *might* come after he received the requested documents" and could not be construed as an appeal of the denial.  *Id.* (emphasis in the original).  In *Sears*, the court determined that two letters sent by the plaintiff's attorney did not satisfy the exhaustion requirement because the plan's explicit and "mandatory" procedures required the plaintiff to "call the employee center within eight days after a disability begins" and file a claim for long term disability on a specific form at a specified address.  2015 WL 779003, at *3.  In contrast, the Plan in the instant case does not specify mandatory procedures for filing a claim for benefits and the procedure for seeking review of a denial merely requires that an employee "file your claim for review, in writing, with the Administrator" within 60 days of receiving written notice of a denial of a claim for benefits.  (Doc. 23-2 at 14-15).  The allegations of the amended complaint satisfy these Plan terms.  (Doc. 15, ¶¶ 59-64).

[9] In view of this finding, the Court need not reach plaintiff's alternative argument that a remand of Count II for exhaustion purposes would be futile.

**B. Count I**

Count I of plaintiff's amended complaint against Talbert House alleges a breach of fiduciary duty claim under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). That section provides for a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*Id*.

Plaintiff alleges that Talbert House breached its fiduciary duties under ERISA by misrepresenting or failing to represent material facts to plaintiff concerning her eligibility for benefits under the 403(b) Plan. Plaintiff alleges she reasonably relied on Talbert House's representations to her detriment, and as a result "suffered damages of lost investment income and lost tax benefits of deferring compensation through elective employee contributions from 2002 to 2018." (Doc. 15, ¶ 80).

Talbert House argues that Count I for breach of fiduciary duty should be dismissed because it is nothing more than a repackaged plan-based claim that does not allege a separate and distinct injury that would give rise to such a claim. (Doc. 23 at 13). Talbert House alleges that plaintiff's Count I breach of fiduciary claim is duplicative of her claim for a denial of benefits under Count II of the amended complaint. Talbert House asserts that plaintiff's request for relief under Count I seeks compensation stemming from the denial of benefits, which is the same relief plaintiff seeks under Count II.

The Sixth Circuit forbids a duplicate claim for relief under the catchall provision of § 502(a)(3) where there is an adequate remedy under § 502(a)(1)(B) because such relief is unnecessary and unavailable. *Rochow v. Life Ins. Co. of N. Am*., 780 F.3d 364, 372 (6th Cir.

2015) (citing *Wilkins v. Baptist Healthcare System, Inc*., 150 F.3d 609, 615 (6th Cir. 1998)). The Sixth Circuit has found:

> A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate. *See Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840-42 (6th Cir. 2007). . . . [T]he availability of relief under § 502(a)(3) is contingent on a showing that the claimant could not avail himself or herself of an adequate remedy pursuant to § 502(a)(1)(B).

*Rochow*, 780 F.3d at 372-73 (citing *Wilkins*, 150 F.3d at 615). The "other appropriate equitable relief" sought under § 502(a)(3) must not be an "impermissible claim 'repackaging,'" which is "implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury." *Id.* at 373.

In this case, the breach of fiduciary duty claim alleged in Count I alleges an injury of lost investment income and lost tax benefits from not deferring compensation through elective *employee* deferrals/contributions from 2002 to 2018. (Doc. 15, ¶ 80).[10] Plaintiff alleges she did not defer her compensation (i.e., make elective employee deferrals/contributions) into the 403(b) Plan because Talbert House misrepresented to her that she was ineligible to make such contributions and failed to inform her of her eligibility for such benefits.

The injury plaintiff claims in her wrongful denial of benefits claim in Count II is based on Talbert House's alleged miscalculation of non-elective *employer* contributions under the pre-November 2017 plan. Plaintiff alleges she was deprived of employer contributions in the proper amount from 2014 until 2017 because Talbert House capped her salary at the incorrect amount

---

[10] Equitable relief for a breach of fiduciary duty claim under § 502(a)(3) can include "make-whole relief in the form of money damages." *Stiso v. Int'l Steel Grp*., 604 F. App'x 494, 500 (6th Cir. 2015).

under the Plan.  (Doc. 15, ¶¶ 83-85).  Count II further alleges that Talbert House misclassified plaintiff as a non-eligible "on-call" employee when she was in fact a regular, full-time employee under the modified November 1, 2017 Plan, thereby denying her employer contributions for this time period as well.

Count I is not a repackaging of the employer contribution benefits sought by plaintiff in Count II.  Count I is not based on an injury stemming from the denial of benefits.  Rather, the injury stems from Talbert House's alleged misrepresentations that plaintiff was not eligible to make employee deferrals/contributions.  Both Counts allege different injuries stemming from different causes.[11]  Plaintiff alleges the Plan cannot remedy the lost investment income and tax benefits from her failure to make employee deferrals and, therefore, the injury she seeks to redress is not a Plan-based injury like Count II.  The Plan does not provide an adequate remedy to plaintiff for the lost investment income and lost tax benefits allegedly stemming from Talbert House's breach of fiduciary duty.  Because plaintiff does not have an adequate and effective remedy for this injury under § 502(a)(1)(B) (Count II), she is entitled to pursue a claim for breach of fiduciary duty under § 502(a)(3).  *Rochow*, 780 F.3d at 373.

Talbert House also argues that Count I of plaintiff's first amended complaint should be dismissed because her allegations are insufficient to state a claim for breach of fiduciary duty against Talbert House.  Talbert House argues that any alleged misrepresentations made by the

---

[11] *Dye v. Formica Corp. Employee Ret. Plan*, No. 1:18-cv-155, 2019 WL 859224, at *5 (S.D. Ohio Feb. 22, 2019), cited by Talbert House in support of its argument, is inapposite.  (Doc. 23 at 14-15).  The plaintiff in *Dye* challenged the denial of a lump sum payment under an ERISA plan administered by his employer claiming a wrongful denial of benefits under § 502(a)(1)(B) and a breach of fiduciary duty under § 502(a)(3).  Both claims sought the same recovery – a lump sum payment in the amount of $48,531.65 – and both claimed the same injury, to wit: the denial of the lump sum payment.  The Court found that the breach of fiduciary duty claim was duplicative of the wrongful denial of benefits claim, sought to remedy the same injury as the wrongful denial of benefits claim, and was barred under *Rochow*, 780 F.3d at 372, as a "repackaging" of the § 502(a)(1)(B) claim.  Here, in contrast, plaintiff does not seek to remedy the same injury in both Counts I and II, nor seek the same relief.  Count I seeks compensation for lost investment income and lost tax benefits based on alleged misrepresentations by Talbert House, and Count II seeks non-elective employer contributions under the terms of the 403(b) Plan.

unnamed HR receptionist – a "ministerial" employee – regarding plaintiff's eligibility for elective employee deferrals (Doc. 15, ¶ 13) does not state a claim for relief because plaintiff does not allege that the receptionist had any authority to act as a plan fiduciary.  Talbert House further argues that to the extent plaintiff alleges that she communicated with the HR directors at Talbert House, plaintiff fails to allege that these individuals made any misrepresentations or that she relied on any alleged misrepresentations or omissions to her detriment.

> Included in the fiduciary duties imposed by ERISA is the duty to inform:
>
> "[A] fiduciary must give complete and accurate information in response to participants' questions. . . ." *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992); *accord Electro–Mechanical Corp. v. Ogan*, 9 F.3d 445, 451 (6th Cir. 1993) ("ERISA imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the plan or any of its terms."). We have also held that "[m]isleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty.'" *Drennan*, 977 F.2d at 251 (quoting *Berlin* [*v. Michigan Bell Tel. Co.*], 858 F.2d [1154,] 1163 [(6th Cir. 1988)].

*Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).  In addition, "once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire." *Id*.  (citing with approval circuit court cases).  *See also Gregg v. Transportation Workers of Am. Int'l*, 343 F.3d 833, 848 (6th Cir. 2003).  ("Defendants had an affirmative obligation to provide Plaintiffs with this material information whether or not they asked for it.").

Plaintiff made numerous contacts with Talbert House's HR department about her 403(b) Plan benefits.  One such contact was in January 2012, when plaintiff called Talbert House's HR department after she received a deposit of a non-elective employer contribution into her account.

Plaintiff asked whether that meant she was eligible for elective employee deferrals. (Doc. 15, ¶ 13). The receptionist advised plaintiff she "needed to ask someone and placed her on hold. When she returned to the call, the receptionist said Ms. Love was not eligible for elective employee deferrals." (*Id*.). In reasonable reliance on this misleading information, plaintiff made no employee deferrals and lost investment income and lost tax benefits. This is sufficient to state a claim for relief.

Talbert House argues that these allegations do not state a claim for breach of fiduciary duty because persons who perform ministerial functions, such as receptionists, are not ERISA fiduciaries; plaintiff failed to identify by name this employee; and plaintiff did not allege that this receptionist had any authority to act as a plan fiduciary. The Court disagrees that dismissal of plaintiff's breach of fiduciary claim is warranted for these reasons.

It is clear that "a corporation does not act on its own, but through its agents." *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan*, No. 15-6112, 2016 WL 4728029, at *7 (6th Cir. Sept. 12, 2016). The question, therefore, is whether the Talbert House employees who made the alleged misrepresentation to plaintiff concerning her ineligibility for benefits had apparent authority to do so such that Talbert House may be held liable for those actions. *Id*. "Apparent authority exists when (1) the principal manifests that another is the principal's agent, and (2) it is reasonable for a third person dealing with the agent to believe the agent is authorized to act for the principal." *Id*. (citing *Anderson v. Int'l Union, United Plant Guard Workers of Am*., 150 F.3d 590, 592-93 (6th Cir. 1998). The amended complaint alleges that plaintiff received incorrect information from the HR receptionist about her eligibility for benefits after the receptionist consulted with other Talbert House HR personnel. It is not unreasonable for an employee to contact an employer's human resources department when inquiring about pension

benefits to which the employee might be entitled.  *See Weaver v. Prudential Ins. Co. of Am.*, No. 3:10-cv-438, 2011 WL 4833574, at *10 (M.D. Tenn. Oct. 12, 2011) ("Moreover, employees regularly, foreseeably, and reasonably rely on information provided by human resources managers regarding their benefits under employer-sponsored ERISA plans.").   Plaintiff inquired about her eligibility to make employee deferrals under the Plan and was advised that she was ineligible.  At this juncture, construing the allegations of the amended complaint as true, the Court cannot conclude that the Talbert House human resources personnel did not have apparent authority to advise plaintiff on her eligibility for benefits under the Plan.  *See Deschamps*, 2016 WL 4728029, at *8 (employer acted "as a fiduciary when it, through its agents with apparent authority, misrepresented to [the plaintiff] the status of his pension benefits"); *James*, 305 F.3d at 455-66 (concluding that employer breached its fiduciary duties when its human resources representative and plant manager made material misrepresentations to employees concerning their retirement benefits); *see also Krohn*, 173 F.3d at 548-49 ("a personnel assistant" at the employer hospital who gave incomplete and inaccurate information to plaintiff was sufficient to establish a breach of fiduciary duty on the part of the employer hospital).[12]  Talbert House's communication with plaintiff was materially misleading in that there was a substantial likelihood that it would lead a reasonable employee to forego making employee deferrals to which she was entitled, especially given the need for the employer to facilitate the mechanics of such deferrals.

---

[12] This case is unlike the company and call center employees in *Stark v. Mars, Inc.*, 879 F. Supp. 2d 752, 773 (S.D. Ohio 2012), *aff'd*, 518 F. App'x 477 (6th Cir. 2013), cited by Talbert House in support of its motion.  The company in *Stark* was merely the "record keeper for the plan and did not make benefit decisions" and the call center employees were performing ministerial functions like calculating benefits based on information provided to them by the plan and preparing employee communication materials.  Here, in contrast, the amended complaint alleges that plaintiff received incorrect information from the HR receptionist about her eligibility for benefits after consulting with other Talbert House HR personnel.  At this juncture, construing those facts as true, this is not a mere ministerial function, but one of plan administration by Talbert House as it involves a decision on eligibility for benefits.

This Talbert House employee did not act in a purely ministerial role in allegedly obtaining misleading information from other human resources personnel regarding plaintiff's eligibility for benefits under the Plan.  Making a decision on Plan eligibility is a discretionary task involving the interpretation of Plan terms, which relates to the Plan's management or administration.  *See* 29 U.S.C. § 1002(21)(A).  *See also Weaver*, 2011 WL 4833574, at *9.  As such, this is not a mere ministerial function that cannot give rise to a breach of fiduciary duty.  At this juncture, the Court declines to dismiss plaintiff's breach of fiduciary claim against Talbert House based on the human resources personnel's actions as alleged in the amended complaint.

In addition, Talbert House HR directors failed to answer or respond to plaintiff's requests for benefits.  (*See* Doc. 15 at ¶¶ 15, 34-35, 54, 58).  A fiduciary's duty "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the [employer] knows that silence might be harmful."  *Krohn*, 173 F.3d at 548.  In *Krohn*, the plaintiff was permanently disabled in an automobile accident.  Her employer, which was also the plan administrator, failed to provide a full and complete response to a request by the plaintiff's husband for information about plan benefits, including her entitlement to long term benefits, which resulted in the plaintiff's untimely application for long-term disability benefits.  Under these circumstances, the Sixth Circuit held that the employer's "failure to provide information about the availability of long-term benefits breached its duty to disclose and inform because it failed to 'give complete and accurate information in response to participants' questions. . . .'"  *Id.* (quoting *Drennan*, 977 F.2d at 251).

Similar to *Krohn*, which involved an affirmative request for information that was met with an affirmative omission, plaintiff here requested information about her eligibility for 403(b) benefits, explained that she was previously told she was ineligible and why she was requesting

assistance, and was met with silence.  Given these allegations, which the Court must accept as true on a motion to dismiss, plaintiff's amended complaint states a claim for relief for a breach of fiduciary duty against Talbert House.  *See Weaver*, 2011 WL 4833574, at *9-10 ("The inescapable truth is that an ordinary employee is justified in going to her employer's director of human resources to request information regarding her coverage under a group policy sponsored by the employer.").  Had Talbert House given plaintiff full and accurate information about her eligibility for 403(b) employee deferral benefits, it is substantially likely that she would have made the contributions under the plan, especially given her allegations about her desire to make retroactive deferrals.  *Krohn*, 173 F.3d at 547.  Accordingly, plaintiff's amended complaint states a plausible claim for breach of fiduciary duty against Talbert House.

### D.  Count IV-ERISA interference claim

Plaintiff alleges that Talbert House interfered with her protected rights and retaliated against her on the basis of her protected activity in violation of § 510 of ERISA, 29 U.S.C. § 1140.  Plaintiff alleges Talbert House terminated her shortly before the effective date of the changes in her employment status and benefits classification, which would have entitled plaintiff to greater benefits under the Plan.  (Doc. 15, ¶¶ 95-102).  Talbert House seeks dismissal of this claim based on plaintiff's failure to allege facts showing Talbert House had the specific intent to violate ERISA.

Section 510 of ERISA states: "It shall be unlawful for any person to discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled" under an employee benefit plan.  29 U.S.C. § 1140.  To state a claim for relief under § 510, the plaintiff must allege that the defendant had a "specific intent to violate ERISA."  *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997) (citing

26

*Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992)).  "The plaintiff is not required to show that the employer's sole purpose in discharging h[er] was to interfere with h[er] [ERISA] benefits, but rather that it was a 'motivating factor' in the decision."  *Humphreys*, 966 F.2d at 1043.  On a motion to dismiss, the Court must ask whether the facts, taken as true, permit an inference that Talbert House terminated plaintiff's employment for the purpose of interfering with her right to benefits under Talbert House's ERISA plan.  *See Spangler v. E. Kentucky Power Coop., Inc.*, 790 F. App'x 719, 722 (6th Cir. 2019) (citing *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505-06 (6th Cir. 2013); *Bailey v. Enrichment Corp.*, 530 F. App'x 471, 477-78 (6th Cir. 2013)).

Here, plaintiff's allegations, taken as true, support an inference of intent to interfere with her rights under ERISA.  The amended complaint alleges that in January 2018, plaintiff received an employer contribution in the incorrect amount and based on less than one-half of her income.  After plaintiff questioned Talbert House human resources employees, the employer contribution was removed the following month.  Plaintiff was then advised that her employment status and benefits classification would be changing to "modified full-time" status effective March 1, 2018.  On February 12, 2018, plaintiff requested a meeting with the human resources director about her 403(b) Plan benefits and was told a meeting would be scheduled.  Plaintiff was then advised on February 14, 2018 that her position was being eliminated.  Plaintiff's termination occurred two weeks before the effective date of her employment status change, which would have entitled plaintiff to benefits under the Plan.  Plaintiff was then offered her old job back on a contractual basis under which she would be ineligible for any Plan benefits.  (Doc. 15, ¶¶ 46-57).

Plaintiff was terminated two weeks before her employment status was to change, which would have entitled her to 403(b) Plan benefits.  The temporal proximity between plaintiff's

termination and the effective date of the change in her employment status provides an inference of intentional interference with the attainment of these benefits. *See Smith*, 129 F.3d at 865 (6th Cir. 1997) (temporal proximity between the termination of the plaintiff's employment and the date he would have become eligible for plan benefits "might support an inference that the adverse actions were taken with the intent of interfering with future disability benefits"); *Humphreys*, 966 F.2d at 1044 (discharge of employee two months before pension would have vested "provides at least some inference of intentional, prohibited activity"). *See also Smith v. Hinkle Mfg., Inc.*, 36 F. App'x 825, 829 (6th Cir. 2002) ("temporal proximity between termination of employment and an event signaling increased costs to a benefit program can 'support an inference that the adverse actions were taken with the intent of interfering with future . . . benefits.'") (quoting *Smith*, 129 F.3d at 865) (and citing cases).  The inference provided by the temporal proximity of plaintiff's termination is further bolstered by the allegation concerning Talbert House's offer to re-employ plaintiff on a contractual basis, which would have eliminated plaintiff's eligibility for Plan benefits.  The allegations of the amended complaint, taken as true, permit an inference of the intent required for a § 510 ERISA claim.  Talbert House's motion to dismiss plaintiff's § 510 ERISA claim (Count IV) should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Transamerica's motion to dismiss (Doc. 11) be **GRANTED**.

2. Defendant Talbert House's motion to dismiss the original complaint (Doc. 12) be **DENIED** as moot.

3.  Defendant Talbert House's motion to dismiss the amended complaint (Doc. 23) be

**DENIED**.

Date:  8/18/2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PATRICIA LOVE,                                                    Case No. 19-cv-448
       Plaintiff,                                              Dlott, J.
                                                                          Litkovitz, M.J.

       vs.

TALBERT HOUSE, et al.,
       Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).